1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   RICHARD MICHAEL TWAY,         )  Civil No. 12-1093-WQH(WVG)
                                    )
12              Plaintiff,          )  REPORT AND RECOMMENDATION
                                    )  DENYING PLAINTIFF'S MOTION FOR
13   v.                             )  SUMMARY JUDGMENT AND GRANTING
                                    )  DEFENDANT'S MOTION FOR SUMMARY
14   MICHAEL J. ASTRUE, Commissioner )  JUDGMENT
     of Social Security,            )
15                                  )  (DOC. NOS. 15, 18)
                Defendant.          )
16                                  )
     _____ )
17

18                                  I

19                            INTRODUCTION

20        Plaintiff  Richard  Michael  Tway  ("Plaintiff"),  filed  a

21   Complaint for Review of the Final Decision of the Commissioner of

22   Social  Security  ("Complaint").  Defendant  Michael  J.  Astrue,

23   Commissioner of Social Security, ("Defendant"), filed an Answer to

24   the  Complaint  and  lodged  the  Administrative  Record  ("Tr."),

25   pertaining to this case.  Plaintiff has filed a Motion for Summary

26   Judgment ("Plaintiff's MSJ").  Defendant has filed an Opposition to

27   Plaintiff's Motion for Summary Judgment and a Cross-Motion for

28   Summary Judgment ("Defendant's MSJ").  Plaintiff has also filed a

                                                         12cv1093

1   Reply Memorandum in Support of his Motion for Summary Judgment and

2   an Opposition to Defendant's Cross-Motion for Summary Judgment.

3        Upon examination of the entire record, the Court RECOMMENDS

4   Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's

5   Cross Motion for Summary Judgment be GRANTED.

6                                   II

7                           PROCEDURAL HISTORY

8        On April 13, 2010, Plaintiff filed a claim for disability

9   benefits, alleging disability beginning June 13, 2002 (TR. 15).  On

10  August 10, 2010, the Defendant denied the initial claim for

11  benefits, and on September 9, 2010, denied reconsideration (TR. 15).

12       Plaintiff had two hearings before Administrative Law Judge

13  Edward D. Steinman ("ALJ"), which were held on April 26, 2011 and

14  September 6, 2011 (TR. 15).  Plaintiff, represented by counsel,

15  testified at the first hearing before the ALJ (TR. 15).

16       Plaintiff appealed the ALJ's decision to the Social Security

17  Appeals Council (TR. 7-10).  On February 3, 2012, the Appeals

18  Council denied review of the ALJ's decision and the ALJ's decision

19  became the final opinion of the Commissioner (TR. 7-10).  On May 3,

20  2012 Plaintiff filed a Complaint in this Court for Review of the

21  Commissioner's Final Decision.

22                                  III

23                      SUMMARY OF APPLICABLE LAW

24       Title II of the Social Security Act, ("ACT") as amended,

25  provides for the payment of insurance benefits to persons who have

26  contributed to the program and who suffer from a physical or mental

27  disability.  42 U.S.C. § 423 (a)(1)(D). Title XVI of the Act

28  provides for the payment of disability benefits to indigent persons

12cv1093

under the Supplemental Security Income (SSI) program. § 1382 (a). Both titles of the Act define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." Id.  The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Id.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity."  If he is, disability benefits are denied. 20 C.F. R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" at issue in this case.  The severity regulation provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical

12cv1093

or mental ability to do basic work activities, we will

find that you do not have a severe impairment and are,

therefore, not disabled.  We will not consider your

age, education, and work experience. §§ 404.1520(c),

416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" [u]se of judgment;" "[r]esponding appropriately to supervision, co-workers, and usual work situations;" and "[d]ealing with changes in a routine work setting." Id.

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowl-edges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past.  If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R.

1    §§ 404.1520(e), 416.920(e). If the claimant cannot perform his

2    previous work, the fifth and final step of the process determines

3    whether he is able to perform other work in the national economy in

4    view of his age, education, and work experience. The claimant is

5    entitled to disability benefits only if he is not able to perform

6    other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

7        As a general rule, more weight should be given to the opinion

8    of a treating source than to the opinion of doctors who do not treat

9    the claimant.  Benton v. Barnhart, 331 F.3d 1030, 1036 (9th Cir.

10   2003)[citing Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995)]. If

11   the treating doctor's opinion is contradicted by another doctor, the

12   ALJ may not reject this opinion without providing "specific and

13   legitimate reasons" supported by substantial evidence in the record

14   for doing so. Id. The ALJ must give consideration to the physicians'

15   examining and treatment relationships; what support, including

16   objective testing, relied upon; consistency of the opinions;

17   physicians' specializations; and any other factors used to arriving

18   at the opinions.  20 C.F.R. § 404.1527(d).  If an ALJ fails to

19   consider each 20 C.F.R. § 404.1527(d) factor before giving no weight

20   to the opinions of a [plaintiff]'s treating specialist, then a

21   federal court may remand the case; the ALJ should conduct the

22   analysis on remand. Id.

23                              IV

24                       ALJ'S FINDINGS

25   The ALJ made the following pertinent findings:

26   1. [Plaintiff] meets the insured status requirements of

27      the Social Security Act through December 31, 2007.

28

12cv1093

2. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2007, the date [Plaintiff] became disabled (20 CFR 404.1520(b), 404.1571 *et seq.*).

3. From October 1, 2007 through June 1, 2009, the period during which [Plaintiff] was under a disability, [Plaintiff] had the following severe impairment: degenerative disk disease of the lumbar spine, status post lumbar surgery (20 CFR 404.1520).

In ascertaining the nature and severity of [Plaintiff's] medically determinable impairment, the undersigned elicited testimony from Malcolm Brahms, M.D., a board certified orthopedic surgeon. Dr. Brahms testified at both hearings as to his extensive review of the record. According to the doctor, from the amended alleged onset date of October 1, 2007 until June 1, 2009, [Plaintiff] could not sustain full-time work and met listing 1.04. As of June 2, 2009, [Plaintiff] could perform light work as opined by the orthopedic consultative examiner in March 2011 (Exhibit 6F). He testified that a repeat MRI in 2007 showed some signs of instability but there was no evidence of a herniated disc. At the time of the first hearing, Dr. Brahms concluded that a [sic] further studies would be needed to determine the reason for [Plaintiff's] ongoing pain. At the second hearing, the doctor testified, following has [sic] review of additional records including a CT scan in August 2009, that his opinion had not changed. [Plaintiff] still met

1   listing 1.04 until June 1, 2009 at which time he was able

2   to perform light work.

3           Regarding the Agreed Medical Examination by Dr.

4   Lane of March 28, 2011, the [sic] Dr. Brahms testified

5   that while [Plaintiff] had a positive straight leg

6   raising[1] at 40 degrees, this was a one-time occurrence

7   that was not supported by other evidence, including the

8   consultative examination by orthopedic surgeon Thomas

9   Sabourin of March 14, 2011.  Despite Dr. Lane's finding,

10  Dr. Brahms pointed out that there was no evidence of

11  motor loss or instability and the wound had healed.

12  Information in the record revealed that there was no

13  further evidence of pseudoarthrosis[2].

14

15

16

17

18

19

---

20  [1] The straight leg raising test involves the subject lying face-up with his/her legs straight. A physician will support the leg by holding it under the

21  knee and will lift it up until the subject reports feeling pain, feeling more pain, or until the leg has been stretched as far as it will go.  Any pain that is experienced is typically the result of the nerve being compressed due to

22  stretching of the leg, depending on when or at what degree the pain is felt.  A positive straight leg test occurs when the leg is flexed between 30 and 70 degrees.   The pain will shoot all the way down the leg and below the ankle,

23  indicating compression of the sciatic nerve, most likely caused by a herniated disc. FAMILY PRACTICE NOTEBOOK, http://www.fpnotebook.com/ortho/exam/strghtlgrs.htm

24

25  [2] The spine is made up of individual vertebra linked together by a disc in the front and two small joints in the back of the spine. The joints allow bending and twisting of the spine.   These joints frequently become worn out, or

26  "arthritic", with aging or following injury and eventually become painful. Surgical fusion may be recommended to stabilize the arthritic segments of the spine.  Once a patient has decided to proceed with spinal fusion surgery then

27  obtaining a solid fusion becomes the next area of focus.  Pseudoarthrosis, which is derived from the Greek terms meaning "false joint," is a term used when surgery does not result in solid bone fusion.  SCOLIOSIS RESEARCH SOCIETY,

28  http://www.srs.org/patient_and_family/the_aging_spine/pseudarthrosis.htm

12cv1093

1       The (ALJ) finds Dr. Brahms' testimony persuasive

2       and well supported by the medical evidence of record and

3       so finds.

4           [Plaintiff] testified that in October 2007 he

5       underwent fusion surgery at L3-L5 and a redo surgery on

6       December 2008 at the same location.

7           In March 2008, Jean-Jacques Abitbol, M.D., the

8       Qualified Medical Examiner, issue [sic] an interim

9       report.  The doctor noted that [Plaintiff] continued to

10      have back discomfort and right leg discomfort.   He

11      reported no significant improvement in his leg pain,

12      which was worse with activity.   On examination, the

13      doctor reported that [Plaintiff was] tender in his low

14      back and had pain with forward flexion and extension

15      (Exhibit 9F/4).  An MRI of March 2008 showed mild L5-S1

16      spondylosis[3] (Exhibit 9F/57).  In June 2008, Dr. Abitbol

17      again saw [Plaintiff].  He continued to complain of back

18      pain with symptoms similar to those he experienced

19      preoperatively.  He was tender on examination and had

20      pain primarily with extension (Exhibit 9F/13).  In July

21      2008, Dr. Abitbol reported that [Plaintiff's] CT scan

22      showed psuedoarthrosis postlaterally from L3-L5.   The

23

24      [3]Spondylosis refers to a situation where there is degeneration of the spine.
As with many other spine terms, spondylosis is more of a descriptive term than it
is a diagnosis.  Degeneration of the spine is a natural phenomenon that occurs as
25      people age.   In fact, it is more common for people over age 60 to have
degeneration of the spine than not.   Spondylosis can literally be translated to
mean that one has both back pain and spine degeneration, regardless of what is
26      causing the pain or where the degeneration is occurring.   When used to describe
MRI results, spondylosis is often referring to the visible degeneration of the
spine.  Evidence of spondylosis on an MRI or a computed tomography scan (CT scan)
27      does not mean that the patient's neck or back pain is being caused by the
degeneration.   SPINE-HEALTH.COM,
28      http://www.spine-health.com/conditions/back-pain/spondylosis-what-it-actually-m
eans

8

1    doctor said in light of these findings, he was a candi-
2    date for a revision lumbar fusion (Exhibit 9F/16, 59).
3    Dr. Abitbol noted in noted [sic] that [Plaintiff] wished
4    to proceed with surgery (Exhibit 9F/22).  His second
5    surgery was in December 2008 (Exhibit 9F/55-56).
6    4. From October 1, 2007 through June 1, 2009, the period
7    during which [Plaintiff] was disabled, the severity of
8    [Plaintiff's] degenerative disc disease of the lumbar
9    spine, status post lumber surgery met the criteria of
10   section(s) 1.04 of 20 CFR Part 404, Subpart P, Appendix
11   1 (20 CFR 404.1520(d) and 404.1525).
12   ***

13   In making this finding, the (ALJ) considered all
14   symptoms and the extent to which these symptoms can
15   reasonably be accepted as consistent with the objective
16   medical evidence and other evidence, based on the
17   requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p.
18   The undersigned has also considered opinion evidence in
19   accordance with the requirements of 20 CFR 404.1527 and
20   SSRs 96-2p, 96-5p, 96-6p and 06-3p.

21   In considering [Plaintiff's] symptoms, the (ALJ)
22   must follow a two-step process in which it must first be
23   determined whether there is an underlying medically
24   determinable physical or mental impairment(s)-i.e., an
25   impairment(s) that can be shown by medically acceptable
26   clinical and laboratory diagnostic techniques-that could
27   reasonably be expected to produce [Plaintiff's] pain or
28   other symptoms.

12cv1093

1        Second, once an underlying physical or mental

2    impairment(s) that could reasonably be expected to

3    produce [Plaintiff's] pain or other symptoms has been

4    shown, the (ALJ) must evaluate the intensity, persis-

5    tence, and limiting effects of [Plaintiff's] symptoms to

6    determine the extent to which they limit [Plaintiff's]

7    ability to do basic work activities.  For this purpose,

8    whenever statements about the intensity, persistence, or

9    functionally limiting effects of pain or other symptoms

10    are not substantiated by objective medical evidence, the

11    (ALJ) must make a finding on the credibility of the

12    statements based on a consideration of the entire case

13    record.

14    The (ALJ) finds that, from October 1, 2007 through

15    June 1, 2009, the severity of [Plaintiff's] impairments

16    met listing 1.04 as Dr. Brahms testified.

17    After considering the evidence of record, the under-

18    signed finds that [Plaintiff's] medically determinable

19    impairments could reasonably be expected to produce the

20    alleged symptoms, and that [Plaintiff's] statements

21    concerning the intensity, persistence[,] and limiting

22    effects of these symptoms are generally credible from

23    October 1, 2007 through June 1, 2009.

24    5. [Plaintiff] was under a disability, as defined by the

25    Social Security Act, from October 1, 2007 through June 1,

26    2009.

27    6. [Plaintiff] has not developed any new impairment or

28    impairments since June 2, 2009, the date [Plaintiff's]

12cv1093

disability ended.   Thus, [Plaintiff's] current severe impairment is the same as that present from October 1, 2007 through June 1, 2009.

7. Beginning June 2, 2009, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

The record does not report the existence of any functional limitations and or diagnostic test results, which would suggest that the impairments meet or equal the criteria of any specific listing.   In addition, no treating or examining physician has reported findings, which either meet or are equivalent in severity to the criteria of any listed impairment, nor are such findings indicated or suggested by the medical evidence of record. ***

8. Medical improvement occurred as of June 2, 2009, the date [Plaintiff's] disability ended (20 CFR 404.1594(b)(1)).

Dr. Brahms testified that from June 2, 2009 on, there was no evidence of motor loss or sensory or reflex loss.  On June 4, 2009, Dr. Abitbol noted that [Plaintiff] was status post his second surgery.  He reported that [Plaintiff] continued to do well and was markedly improved compared to his preoperative status (Exhibit 9F/30).   He stated that [Plaintiff] could return to

12cv1093

1  modified duties with a 20-pound weight lifting restric-

2  tion (Exhibit 9F/30).

3  9. The medical improvement that has occurred is related

4  to the ability to work because [Plaintiff] no longer has

5  an impairment or combination of impairments that meets or

6  medically exceeds the severity of a listing (20 CFR

7  404.1594(c)(3)(i)).

8  10. After careful consideration of the entire record, the

9  (ALJ) finds that, beginning June 2, 2009, [Plaintiff] has

10  had the residual functional capacity to lift and carry 20

11  pounds occasionally and 10 pounds frequently, stand

12  and/or walk for about 6 hours in an 8-hour workday and

13  sit for 6 hours in an 8-hour workday. [Plaintiff] could

14  also climb, stoop, kneel and crouch occasionally.

15  [Plaintiff] testified he cannot work because he is

16  in pain. He said he was in worse pain now than before

17  his surgeries. He experiences the pain in his low back

18  and right leg. On a 0-10 scale, he testified that the

19  pain can get as high as 8, but was generally around 4-5.

20  It got worse with activity and was better when he was

21  lying down, which he said he did about 40 percent of the

22  day. He said he could lift and carry 10-15 pounds. He

23  can sit for 30 minutes but then would need to go lie

24  down. He could stand and walk for about one hour. Due

25  to his pain and need to lie down, he could not sustain

26  full-time work. He takes Norco for pain and Soma for

27  muscle spasms in his back. He experiences these spasms

28

12cv1093

1    a couple times a day.  He also has sleep problems due to

2    pain.  It also affects his concentration and focus.

3    After considering the evidence of record, the (ALJ) finds

4    that [Plaintiff's] medically determinable impairments

5    could reasonably be expected to produce the alleged

6    symptoms; however, [Plaintiff's] statements concerning

7    the intensity, persistence and limiting effects of these

8    symptoms are not credible beginning June 2, 2009, to the

9    extent they are inconsistent with the residual functional

10   capacity assessment for the reasons explained below.

11       The weight of the objective evidence does not

12   support [Plaintiff's] claims of disabling limitations to

13   the degree alleged.

14       The record does not support [Plaintiff's] allega-

15   tion that he must lie down 40 percent of the day.

16       The record fails to document that [Plaintiff] has

17   been hospitalized for his impairment or indicate that

18   [Plaintiff] has received significant active care other

19   than for conservative routine maintenance since his

20   second surgery in December 2008.  There have been no

21   significant increases or changes in prescribed medication

22   reflective of an uncontrolled condition.  In July 2009,

23   he was not using much in the way of pain medications and

24   his leg pain had significantly improved (Exhibit 9F/34-

25   35).

26   ***

27       None of [Plaintiff's] treating physicians have

28   opined that he is totally and permanently disabled from

12cv1093

1    any kind of work.  Dr. Abitbol, who performed [Plain-

2    tiff's] surgeries, has opined that [Plaintiff] could

3    perform light work (Exhibit 9F/30, 41, 53; 12F).

4        The objective medical evidence is fully consistent

5    with the above residual functional capacity and is

6    inconsistent with the allegations of disabling levels of

7    pain.  The most recent CT scan of August 2009 indicates

8    that there is no evidence of psuedoarthrosis (Exhibit

9    9F//63; 11F).

10       Physical examinations since June 2, 2009 were

11   generally unremarkable with few abnormal findings.  Dr.

12   Abitbol found him permanent and stationary[4] in September

13   2009 (Exhibit 9F/41).  In January 2011, his complaints

14   were of mostly mechanical back pain with some vague

15   symptoms into the right leg.  The CT showed a sol[i]d

16   incorporation of the fusion mass and X-rays showed a

17   solid fusion with the hardware in good position (Exhibit

18   9F/50).

19       The physical examination in March 2011, conducted

20   by consultative examiner, Thomas Sabourin, M.D.[,] a

21   board certified orthopedic surgeon, was unremarkable.

22   The doctor noted that [Plaintiff] was in no acute

23   distress and was alert and oriented.  He could sit and

24   stand with normal posture and there was no evidence of

25   any tilt or list.  He could sit comfortably during the

26

27       [4]Permanent and stationary is a term used in Workers' Compensation to
     describe when a subject's medical condition has reached maximum medical
     improvement.  In other words, the subject's medical condition has stabilized and
28   is unlikely to change. US SOCIAL SECURITY ADMINISTRATION,
     https://secure.ssa.gov/poms.nsf/lnx/0452120001

12cv1093

examination.   His  gait  was  normal  and  he  used  no
assistive  device  (Exhibit  6F/4).   Examination  of  the
lumbar  spine  indicated  slight  pain  at  the  extremes  and
minimal  tenderness  in  the  midline  and  right  buttock  area.
There  was  no  spasm,  swelling  or  heat  (Exhibit  6F/4).
Range  of  motion  was  within  normal  limits  and  straight  leg
raising,  both  sitting  and  supine,  were  negative  (Exhibit
6F/5).   He  was  neurologically  intact  (Exhibit  6F/6).

In  connection  with  his  worker's  [sic]  compensation
claim,  [Plaintiff]  was  also  examined  on  March  28,  2011,
by  John  Lane,  M.D.,  the  Agreed  Medical  Examiner.   In  his
report,  Dr.  Lane  noted  that  [Plaintiff's]  straight  leg
raising  test  was  positive  on  the  right  and  left  at  40
degrees  (Exhibit  13F/12).  Dr.  Brahms,  the  medical  expert
in  this  case,  found  Dr.  Lane's  finding  in  this  regard  to
be  a  onetime  event  and  inconsistent  with  Dr.  Sabourin's
examination.  He  concluded  that  decreased  range  of  motion
did  not  equate  to  disability.   It  was  not  consistent  with
the  rest  of  the  exam  because  there  was  no  evidence  of
motor  loss  or  instability.   Despite  this  finding,  the
exam  was  otherwise  unremarkable.   Dr.  Lane  noted  that
[Plaintiff's]  X-rays  were  consistent  with  a  well-healed
fusion  and  he  found  no  evidence  of  instability  (Exhibit
13F/12).

[Plaintiff's]  daily  activities  are  consistent  with
the  above  residual  functional  capacity  assessment.
[Plaintiff  testified  he  can  attend  to  his  personal  needs

12cv1093

1    and take his medication.  He drives and goes to the

2    grocery store.

3         [Plaintiff's] allegations that he has problems

4    with concentration and memory due to pain is not sup-

5    ported by the record.  He testified he is able to drive,

6    watch television, and read.

7         The record does not indicate that [Plaintiff]

8    suffers from debilitating side effects from his medica-

9    tions.

10        [Plaintiff's] use of medications does not suggest

11   the presence of impairments that are more limiting than

12   found in this decision. [Plaintiff's] analgesic medica-

13   tion history is inconsistent with his claimed severity of

14   pain.  He has never been maintained on regular prescrip-

15   tion of strong analgesics such as morphine, methadone,

16   Fentanyl, or Oxycontin.

17        Consequently, [Plaintiff's] allegations are not

18   credible to establish more restrictive residual func-

19   tional capacity than found above.

20        As for the opinion evidence, as noted above, Dr.

21   Abitbol, opined on several occasions that [Plaintiff]

22   could perform light work (Exhibits 9F/30, 53; 12F).

23   Pursuant to 20 CFR § 404.1527, the undersigned assigns

24   considerable weight to these opinions, as they are well-

25   supported by the medical evidence including [Plaintiff's]

26   medical history and clinical and objective signs and

27   findings as well as detailed treatment notes, which

28

12cv1093

1    provides a reasonable basis for [Plaintiff's] chronic

2    symptoms and resulting limitations.

3         Dr. Sabourin opined that [Plaintiff] could lift

4    and carry 20 pounds occasionally and 10 pounds fre-

5    quently, stand and or walk for 6 hours in an 8-hour

6    workday and sit for 6 hours in an 8-hour workday.  From

7    a positional standpoint, Dr. Sabourin opined [that

8    Plaintiff] could climb, stoop, kneel, and crouch only

9    occasionally (Exhibit6F).  Pursuant to 20 CFR § 404.1527

10   and Social Security Ruling 96-2p, the (ALJ) assigns

11   significant weight to this opinion, as it is well-

12   supported by the medical evidence, including [Plain-

13   tiff's] medical history and clinical and objective signs

14   and findings as well as detailed treatment notes, which

15   provides a reasonable basis for [Plaintiff's] chronic

16   symptoms and resulting limitations.  Moreover, the

17   opinion is not inconsistent with other substantial

18   evidence of record.  In addition, the physician is an

19   examining source who is familiar with the Social Security

20   Rules and Regulations and legal standards set forth

21   therein and best able to provide a superior analysis of

22   [Plaintiff's] impairments and resulting limitations.

23        AME Dr. Lane opined that [Plaintiff] was precluded

24   from substantial work with regard to the lumbar spine, as

25   he has lost approximately 75 percent of his pre-injury

26   capacity for bending, stooping, lifting, pushing,

27   carrying and other activities of comparable physical

28   effort.  In addition, he is precluded from prolonged

17

1   sitting and standing, contemplating a loss of approxi-
2   mately 25 percent of his pre-injury capacity for sitting
3   or standing (Exhibit 13F/14).  The (ALJ) has taken into
4   account the doctor's finding that [Plaintiff] had a
5   disability for [Plaintiff's] workers' compensation claim.
6   While this is given some weight, it is not dispositive of
7   the issue of whether [Plaintiff] is capable of working.
8   Workers' compensation benefits are calculated in a manner
9   completely different to Social Security disability
10  benefits.   In these systems, body parts and mental
11  disorders are assigned a percentage rating as to the
12  degree of disability.  The question of whether a person
13  is capable of doing "other work" is not addressed.  The
14  (ALJ) has determined that although [Plaintiff's] impair-
15  ment is severe and would impact ability to do all work,
16  it does not render him completely unemployable.  In any
17  event, in addition to his opinion, Dr. Lane also noted
18  that [Plaintiff's] X-rays showed a well-healed fusion and
19  there was no evidence of any instability.  He further
20  concluded that [Plaintiff] did not need any additional
21  care (Exhibit 13F/12, 14).
22  11. [Plaintiff] is unable to perform past relevant work
23  (20 CFR 404.1565).
24  ***
25      The vocational expert classified [Plaintiff's]
26  past work as a piano mover (DOT No. 564.93-7622, SVP 3)
27  as very heavy from an exertional standpoint.  The (ALJ)
28  asked the vocational expert whether [Plaintiff] was able

12cv1093

1    to perform the job requirements of his past relevant work

2    within the residual functional capacity.  The vocational

3    expert testified that given the above residual functional

4    capacity, [Plaintiff] would not be able to perform the

5    requirements of his past work.  Accordingly, [Plaintiff]

6    has not been able to perform past relevant work since

7    June 2, 2009.

8    12. Since June 2, 2009, [Plaintiff] has been a younger

9    individual age 18-49 (20 CFR 404.1563).

10    13. [Plaintiff] has a limited education and is able to

11    communicate in English (20 CFR 404.1564).

12    14. Beginning June 2, 2009, transferability of job skills

13    is not material to the determination of disability

14    because using the Medical Vocational Rules as a framework

15    supports a finding that [Plaintiff] is "not disabled,"

16    whether or not [Plaintiff] has transferrable job skills

17    (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix

18    2).

19    15. Beginning June 2, 2009, considering [Plaintiff's]

20    age, education, work experience, and residual functional

21    capacity, there have been jobs that exist in significant

22    numbers in the national economy that [Plaintiff] can

23    perform (20 CFR 404.1560(c) and 404.1566).

24    Beginning June 2, 2009, if [Plaintiff] had the

25    residual functional capacity to perform the full range of

26    light work, a finding of "not disabled" would be directed

27    by Medical-Vocational Rule 202.18.  However, [Plain-

28    tiff's]  ability to perform all or substantially all of

12cv1093

1    the requirements of this level of work has been impeded

2    by additional limitations.   To determine the extent of

3    erosion of the unskilled light occupational base caused

4    by these limitations, the Administrative Law Judge asked

5    the vocational expert whether jobs exist in the national

6    economy   for   an   individual   with   [Plaintiff's]   age,

7    education,   work   experience,   and   residual   functional

8    capacity   as   of   June   2,   2009.   The   vocational   expert

9    testified that given all of these factors the individual

10   would be able to perform the requirements of representa-

11   tive occupations such as cleaner (DOT No. 323.867-014,

12   light,   SVP   2,   6000   jobs   in   the   San   Diego   region   and

13   500,000 jobs nationally); assembler (DOT No. 731.687-034,

14   light,   SVP   2,   1000   jobs   in   the   San   Diego   region   and

15   77,000 jobs nationally); and parking lot attendant (DOT

16   No. 915.473-101, light, SVP 2,700 jobs in the San Diego

17   region and 66,000 jobs nationally).

18        Pursuant to SSR 00-4p, the (ALJ) has determined

19   that the vocational expert's testimony is consistent with

20   the information contained in the Dictionary of Occupa-

21   tional Titles.

22        Based of the testimony of the vocational expert,

23   the undersigned concludes that, beginning June 2, 2009,

24   [Plaintiff]   has   been   capable   of   making   a   successful

25   adjustment to work that exists in significant numbers in

26   the national economy.   A finding of "not disabled" is

27   therefore appropriate under the framework of the above-

28   cited rule.

12cv1093

16. [Plaintiff's] disability ended June 2, 2009 (20 CFR 404.1594(f)(8)).

***

Based on the application for a period of disability and disability insurance benefits filed on April 13, 2010, [Plaintiff] was disabled under sections 216(I) and 223(d) of the Social Security Act, from October 1, 2007 through June 1,2009.

The workers' compensation offset provisions at 20 CFR 404.408 may be applicable.

V

STANDARD OF REVIEW

A District Court may only disturb the Commissioner's final decision "if it is based on legal error or if the fact findings are not supported by substantial evidence." Spraque v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987); see Villa v. Heckler, 797 F.2d 794, 796 (9th Cir. 1986). The Court cannot affirm the Commissioner's final decision simply by isolating a certain amount of supporting evidence. Rather, the Court must examine the administrative record as a whole. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Yet, the Commissioner's findings are not subject to reversal because substantial evidence exists in the record to support a different conclusion. See, e.g., Mullen v. Brown, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993); see Thompson v. Schweiker, 665 F.2d 936, 939 (9th Cir. 1982). The Commissioner's decision must be set aside,

12cv1093

1    even if supported by substantial evidence, if improper legal

2    standards were applied in reaching that decision. <u>See</u>, <u>e.g.</u>,

3    <u>Benitez v. Califano</u>, 573 F.2d 653, 655 (9th Cir. 1978).

4    VI

5    <u>DISCUSSION</u>

6        Plaintiff's Motion for Summary Judgment raises two issues:

7    Whether there was substantial evidence supporting the ALJ's finding

8    that Plaintiff's impairments did not meet or equal a listed

9    impairment after June 1, 2009, and, whether there was substantial

10   evidence supporting the ALJ's decision to disregard Plaintiff's

11   subjective pain and limitation testimony.

12        A.   THE ALJ'S FINDING THAT PLAINTIFF'S IMPAIRMENTS DID NOT
                 MEET OR EQUAL A LISTED IMPAIRMENT AFTER JUNE 1, 2009 IS

13              SUPPORTED BY SUBSTANTIAL EVIDENCE

14        Plaintiff argues that the ALJ'S findings are not supported by

15   substantial evidence because he failed to show that he considered

16   Plaintiff's obesity when evaluating equivalence under Social

17   Security Agency guidelines for back disorders (Listing 1.04A).

18   Defendant contends that the ALJ properly found that Plaintiff was no

19   longer presumed disabled due to medical improvement and that it was

20   Plaintiff's burden to prove disability.

21        "If medical improvement has occurred and the severity of the

22   prior impairment(s) no longer meets or equals the same listing

23   section used to make [the] most recent favorable decision,[...] that

24   the medical improvement was related to your ability to work."  20

25   C.F.R. § 404.1594 (c)(3)(I).  "An ALJ is not required to discuss the

26   combined effects of a claimant's impairments or compare them to any

27   listing in an equivalency determination, unless the claimant

28   presents evidence in an effort to establish equivalence." <u>Burch v.</u>

12cv1093

1    Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  Plaintiff is responsi-

2    ble for providing the theory of how obesity affects his claim of

3    equivalence.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)

4    (ALJ's failure to consider equivalence was not reversible error

5    because the claimant did not offer any theory, plausible or

6    otherwise, as to how his impairments combined to equal a listing

7    impairment).

8         Plaintiff concedes that after June 1, 2009, his back

9    impairment did not meet all of the criteria to meet Listing 1.04A.

10   After June 2, 2009, the record reflects that there was no evidence

11   of atrophy or positive straight leg raising on a consistent basis

12   after that date. (Plaintiff's MSJ at 5).  Since Plaintiff did not

13   meet any presumptive disability under the Listings, it was his

14   burden to prove that his impairment or combined impairments were

15   equal to a listing impairment.  See Lewis at 514.

16        The ALJ properly found that, beginning June 2, 2009, the

17   records did not reflect any functional limitations, diagnostic tests

18   or treating or examining physicians' reported findings suggesting

19   that Plaintiff's impairment was equal or equivalent in severity to

20   a presumptively disabling impairment under the Listings (Tr. 20).

21   There was no evidence before the ALJ, and none in the record, which

22   states that Plaintiff's obesity limited his functioning.  Neither

23   treatment notes nor any diagnoses addressed Plaintiff's limitations

24   due to obesity.  The medical record is silent as to whether and how

25   Plaintiff's obesity might have exacerbated his condition.

26        Moreover, Petitioner did not present any testimony or other

27   evidence at the hearing that his obesity impaired his ability to

28   work.  Plaintiff testified that there were no other problems that

12cv1093

1  would affect his ability to work besides his leg and back pain (Tr.
2  77). The only indications of Plaintiff's obesity in the record are
3  medical records noting Plaintiff's height, weight, and Body Mass
4  Index, along with one comment by Dr. Sabourin stating that Plaintiff
5  was a, "well-nourished somewhat obese male in no acute distress"
6  (Tr. 305). Neither Plaintiff nor his counsel, during the hearing or
7  in supporting documents, ever mentioned Plaintiff's obesity nor
8  offered any theories as to what effect it may have had on his
9  disability.

10  Since the record did not show how obesity exacerbated
11  Plaintiff's other impairments, the ALJ was not required to address
12  Plaintiff's obesity in his findings. See Burch, 400 F.3d at 683.
13  2005). Specifically, Plaintiff did not offer any theories on how
14  his obesity might have affected the severity of his back impairment
15  under the criteria of Listing 1.04A, or equivalency under any
16  listing. See Lewis, 236 F.3d at 514.

17      B.    THE ALJ'S REJECTION OF PLAINTIFF'S SUBJECTIVE SYMPTOM
           TESTIMONY FOR THE PERIOD AFTER JUNE 2, 2009 WAS SUP-
18             PORTED BY SUBSTANTIAL EVIDENCE.

19  Plaintiff argues that the ALJ's credibility analysis for the
20  period after June 2, 2009 lacks the support of substantial evidence
21  because the ALJ impermissibly rejected Plaintiff's subjective
22  symptom testimony. Defendant contends that the ALJ provided several
23  valid and sufficient reasons for not accepting Plaintiff's subjec-
24  tive statements about the intensity, persistence, and limiting
25  effects of his symptoms. (Tr. 21-23).

26  An ALJ cannot be required to believe every allegation of
27  disability, or else disability benefits would be available for the
28  taking, which would be contrary to the Act. Fair v. Bowen, 885 F.2d

12cv1093

597, 603 (9th Cir. 1989).   Congress expressly prohibits granting disability benefits based on subjective complaints.   42 U.S.C. § 423(d)(5)(A) ("An individual's subjective statement as to pain or other symptoms shall not alone be conclusive evidence of disability."); 20 C.F.R. § 404.1529(a) ("an ALJ will consider claimant's statements about pain or other symptoms but they will not alone establish [disability]").   As such, the ALJ properly discounts credibility if he makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" the testimony.   Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991); Social Security Ruling 96-7p, 1996 WL 374186 (finding must be sufficiently specific to make clear to the claimant and to any reviewing court the weight the ALJ gave to the individuals' statements and the reasons for that weight").

The ALJ may consider a variety of credibility factors, including "ordinary techniques of credibility evaluation;" the claimant's daily activities; nature, location, onset, duration, frequency, radiation, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and adverse side-effects of any medication; treatment, other than medication; functional restrictions; unexplained, or inadequately explained, failure to seek or follow treatment.   Bunnell, 947 F.2d at 346-47.

Here, the ALJ enumerated several specific credibility factors.   He found that, "[t]he weight of the objective evidence does not support [Petitioner's] claims of disability limitations to the degree alleged" (Tr. 21).   The ALJ's analysis presented a

12cv1093

1   variety of reasons why he determined that further limitation beyond
2   the residual functional capacity for a reduced range of light work
3   was not warranted (Tr. 23.)

4       For example, the ALJ noted Plaintiff's activities of daily
5   living. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (ALJ properly
6   considers inconsistencies between claimant's testimony and daily
7   activities). Plaintiff testified that he can attend to his personal
8   needs, take his medication, drive, go to the grocery store, prepare
9   food for himself, pet his dog, take walks in his yard, read books
10  and newspapers, and watch TV (Tr. 22; 80-82). Plaintiff also
11  testified that he left his house on a daily basis to visit his
12  girlfriend (Tr. 80-81).

13      The ALJ properly explained that the records did not include
14  any evidence suggesting that Plaintiff's impairment was equal or
15  equivalent in severity to a presumptively disabling impairment under
16  the Listings, after June 2, 2009 (Tr. 20). Along with medical
17  records, the ALJ relied on the testimony of board-certified
18  orthopedic surgeon Malcolm A. Brahms, M.D., a medical expert who
19  reviewed the record, and who testified that: (1) from October 1,
20  2007 to June 1, 2009, Plaintiff could not sustain fulltime work and
21  met the criteria of listing 1.04, and (2) as of June 2, 2009, he
22  could perform light work (Tr. 19, 53-56). See Morgan v. Comm'r of
23  the SSA, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a
24  nonexamining, testifying medical advisor may serve as substantial
25  evidence when... supported by other evidence in the record and are
26  consistent with it"). Furthermore, the ALJ relied on the testimony
27  of examining physician, Thomas Sabourin, M.D., another board-
28  certified orthopedic surgeon, who noted that during a March 2011

12cv1093

1  examination, Plaintiff was "in no acute distress," "was alert and
2  oriented," and "could sit and stand conformably during the examina-
3  tion" (Tr. 22; 305).

4          Additionally, the ALJ observed that Plaintiff's back
5  treatment had been conservative, and that the medication he took
6  effectively controlled his pain (Tr. 21). See Warre v. Comm'r, 439
7  F.3d 1001, 1006 (9th Cir. 2005) ("impairments that can be controlled
8  effectively with medication are not disabling for the purpose of
9  determining eligibility for SSI benefits").   Also, the ALJ noted
10 that in July 2009, Plaintiff was not using much pain medication at
11 all, and that his leg pain had significantly improved (Tr. 21; 352-
12 53).   Plaintiff's back pain had also improved (Tr. 352).   Plaintiff
13 does not point to any error with the ALJ's findings regarding the
14 objective medical evidence, which is a necessary baseline factor in
15 the ALJ's credibility analysis.   See 20 C.F.R § 404.1529(a) (in
16 evaluating symptoms the ALJ will consider "medical history, the
17 medical signs and laboratory findings"); Bunnell, 947 F.2d at 344
18 (in evaluating credibility, the ALJ should first consider objective
19 medical evidence and then consider other facts).   The ALJ properly
20 discussed the lack of objective evidence to support Plaintiff's
21 allegations (Tr. 21-23).

22         Regarding Plaintiff's back pain, the ALJ summarized Plain-
23 tiff's history of back pain and impairment (Tr. 21-23).   This
24 evidence reveals that Plaintiff's pain was well controlled with
25 medication; he was able to walk, drive, and take care of his daily
26 activities. This level of activity was inconsistent with Plaintiff's
27 testimony at the hearing where he described having to lie down 40
28 percent of the day (Tr. 21).   The ALJ reasonably determined that

12cv1093

1   Plaintiff's allegations of disabling limitations were unsupported

2   and not fully credible. See Burch, 400 F.3d at 681 ("[a]lthough a

3   lack of medical evidence cannot form the sole basis for discounting

4   pain testimony, it is a factor that the ALJ can consider in [the]

5   credibility analysis").

6        The ALJ provided numerous reasons to support his conclusion

7   that Plaintiff's back and leg pain limited him to a residual

8   functioning capacity for a reduced range of light work, but further

9   limitation was not warranted (Tr. 18-25).  Substantial evidence

10  further supported the ALJ's finding that, beginning on June 2, 2009,

11  Plaintiff was capable of making a successful adjustment to work that

12  exists in significant numbers in the national economy (TR. 24).

13       Accordingly, the Court RECOMMENDS that Plaintiff's Motion for

14  Summary Judgment be DENIED and Defendant's Motions for Summary

15  Judgment be GRANTED.

16                              VII

17              CONCLUSIONS AND RECOMMENDATION

18       After a review of the record in this matter, the undersigned

19  Magistrate Judge RECOMMENDS that the Plaintiff's Motion for Summary

20  Judgment be DENIED and Defendant's Cross Motion for Summary Judgment

21  be GRANTED.

22       This Report and Recommendation of the undersigned Magistrate

23  Judge is submitted to the United States District Judge assigned to

24  this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).3.

25       **IT IS ORDERED** that no later than December 31, 2012, any party

26  to this action may file written objections with the Court and serve

27  a copy on all parties. The document should be captioned "Objections

28  to Report and Recommendation."

12cv1093

1        **IT IS FURTHER ORDERED** that any reply to the objections shall

2   be filed with the court and served on all parties no later than

3   January 14, 2013. The parties are advised that failure to file

4   objections within the specified time may waive the right to raise

5   those objections on appeal of the Court's order. Martinez v. Ylst,

6   951 F.2d 1153 (9th Cir. 1991).

7

8   DATED: November 29, 2012

9

10

11

12                                   Hon. William V. Gallo
                                     U.S. Magistrate Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12cv1093